José Luis Ongay, Esquire
Attorney Id. No. 52474
521 South Second Street
Philadelphia, PA 19147
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LILLIE M. COLEY, | : | |
| Plaintiff, | : | Docket Number |
| | : | |
| | : | Civil Action 08-05802 |
| v. | : | |
| | : | |
| RAY LAHOOD,  ANNIE CLARK, & | : | JURY TRIAL DEMANDED |
| GERALD SPANIER. | : | |
| Defendants. | : | |

SECOND  AMENDED  COMPLAINT

Lillie M. Coley,  residing at 9 Patriot Walk, Egg Harbor Township, New Jersey,

by her Counsel, José Luis Ongay, Esquire, alleges as follows:

1. This Complaint sets forth claims arising from employment discrimination

against Plaintiff, Lillie M. Coley ("Ms. Coley" or "Plaintiff") by her supervisors and

managers at the Federal Aviation Administration, ("Defendant," "Agency" or "FAA")

in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et

seq, the Rehabilitation Act of 1973, 29 U.S.C. § 701, and the Family Medical Leave

Act, 29 U.S.C. § 2601, when she was denied an accommodation, denied Family

Medical Leave, and  terminated from her position.

2.   This  Complaint  seeks  equitable  and  monetary  relief  for  Plaintiff,

including, but not limited to, back pay, front pay, pension benefits, attorney fees,

-1-

compensatory damages, liquidated damages, costs of this suit, and all other legal and equitable relief to which he is entitled for the denial of equal employment opportunity and unlawful practices by Defendant, including, but not limited to, the following: employment discrimination against Plaintiff with respect to her race, (Black), her disability, gender (female) and retaliation-based on participation on EEO protected activity.

<u>JURISDICTION AND VENUE</u>

3. This Court has jurisdiction of this matter because the matter involves federal questions.

4. Venue is based upon Plaintiff's residence, at 9 Patriot Walk, Egg Harbor Township, New Jersey located within the territory of the U.S. District Court for the District of New Jersey.

<u>PARTIES</u>

5. Plaintiff, Lillie M. Coley is an African-American woman employed as a computer scientist, FG-1550-13, by the Federal Aviation Administration (FAA), United States Department of Transportation, at the William J. Hughes Technical Center, Atlantic City International Airport between May, 1994 and October 29, 2007. Prior to employment with the FAA, Plaintiff had worked for the Department of the Army for approximately eight years.

6. Defendants: Ray LaHood is a defendant in his official capacity as the Secretary of the United States Department of Transportation. The FAA is an

Agency of the Department of Transportation.  At the times the discriminatory and retaliatory  actions occurred Mary Peters was the Secretary of the United States Department of Transportation. Gerald Spanier was Plaintiff Supervisor, and Annie Clark was Plaintiff Manager. Mr. Spanier and Ms. Clark are only defendants in the FMLA cause of action.

7.   The Department of Transportation of the United States is the named respondent in the  appeal of Lillie M. Coley, filed with the Merit Systems Protection Board, docket number PH 0752-0095-I-1. Plaintiff seeks review of the final decision of the MSPB.

<u>ADMINISTRATIVE PROCESS</u>

8.   Plaintiff initiated informal counseling and filed a formal EEO Complaint against the FAA alleging discrimination. These issues were litigated as part of a mixed case during  a hearing before the Merit Systems Protection Board (MSPB). Thereafter Plaintiff  appealed the MSPB's  Initial Decision to the Office of Federal Operations of the Equal Employment Opportunity Commission.  On October 23, 2008, the Office of Federal Operations issued its decision affirming  the finding of no   discrimination by the MSPB.  On February 13, 2009, the Federal Aviation Administration issued its final agency  decision denying Plaintiff's discrimination claims. Thereafter, Plaintiff filed the forgoing civil action. As such, Plaintiff has exhausted administrative remedies/process.

ALLEGATIONS

9.  Plaintiff has a mental disability, diagnosed by her treating psychiatrist as adjustment disorder and major depression.

10.  Plaintiff's symptoms include hyper vigilance, suspiciousness, preoccupation, nervousness, anxiety,  depressed mood, fatigue, psychomotor agitation,  gastrointestinal discomfort, fatigue, lack of energy, hard time to get things done, and memory problems.

11.  Plaintiff's mental disability substantially limits major life activities, including  communicating, thinking, planning, concentrating, interacting with others, work, ability to do household chores, sleeping and eating.

12.  The FAA regards Plaintiff as having a mental disability of a delusional disorder,  which substantially limits thought processes.

13.  Plaintiff's overall performance was satisfactory for the periods between April 1, 2000 to  April 1, 2002 and from April 1, 2003 - September 30, 2006.

14.  Plaintiff's overall performance was rated as exceptional for the period April 1, 1996  -  March 31, 1998 and April 1, 2003 - March 30, 2004.

15.  Plaintiff has been capable of performing all the essential duties of her job with a  reasonable accommodation during the time of her request although her

-4-

medical condition  started to fluctuate in fall 2008.

16.  Beginning in 2000, and up to her last day of work,  the Agency failed to assign Plaintiff work comparable in  substance and quantity with the work assigned to other computer scientists at Plaintiff's level  and refused technical training and management opportunities to Plaintiff, and denied Plaintiff's request to telecommute.

17.   Coworkers repeatedly taunted and ridiculed Plaintiff by, e.g., pacing the floor outside of Plaintiff's cubicle, warning Plaintiff that toxic substances had been sprayed on keyboards  and cubicles of other employees who had complained of discrimination, spreading salacious  rumors about Plaintiff, making gestures at Plaintiff, making fun of Plaintiff, pointing at Plaintiff,  and distracting her from her work. One co-coworker told the Plaintiff that he was told to watch the Plaintiff.

18.  The lack of assignments, taunts of coworkers, and over all hostile environment,  humiliated Plaintiff before her  peers, increased Plaintiff's anxiety, and caused symptoms of physical illness.

19. Plaintiff requested, and Defendants denied,  a change in her work location, permission to telecommute, detail EEOC, and  interchange assignments to accommodate her disabilities and to allow her to work without the  distractions of coworkers who pervasively distracted Plaintiff from her job duties.

20.   The Employee Relations Specialist recommended, yet Defendants refused, moving Plaintiff from her workstation, to set up a workstation to eliminate or minimize disruptions, to document work assignments, to allow Plaintiff to telecommute one day/week and reassign Plaintiff if necessary.

21.   On September 11, 2006, Plaintiff was not selected for the position of Team Leader because of her sex, disability, reprisal, and race.

22.   On January 3, 2007, Defendant, through James Williams, Systems Engineering Director, denied Plaintiff's request for an interchange assignment agreement. Mr. Williams felt that Plaintiff had emotional problems.

23.   On February 8, 2007, Ms. Annie B. Clark, Manager Systems Engineering, denied a second request for an Interchange Assignment Agreement (IPA) to the University of Pennsylvania, and denied Plaintiff's request to telecommute. Ms. Clark requested information about the possible detail to the EEOC, requested information for approval of a sick leave request, and assured Plaintiff that her Supervisor Gerald Spanier will begin discussions with facilities management to relocate Plaintiff to another workstation, yet nothing happened.

24.  In fact, the FAA never relocated Plaintiff to another workstation and took no other measures to minimize disruptions by coworkers.

25.  Plaintiff requested sick leave and advance sick leave because of her

inability to  continue to function in the disruptive, hostile environment at her job
Defendants denied said requests.

26.  On February 16, 2007, Superior Spanier  placed Plaintiff on  AWOL
(absence without official leave) status until he is in receipt of "proper medical
certification." No Manager or Human Resource personnel  provided the Plaintiff
with  proper Family and Medical Leave Act documents as required by the Act
when a employee  is going to be  absent for more than three days due to a serious
illness.

27.   Plaintiff submitted medical reports in which her treating psychiatrist
diagnosed her with adjustment disorder with depressed mood of uncertain
duration. Plaintiff's psychiatrist  concluded that negative conditioning Plaintiff
experiences at work renders her too anxious and  depressed to work in her
current location of employment.

28.   On or about February 28, 2007, Supervisor  Spanier denied Plaintiff's
request for annual leave for  the period from February 12 through March 9, 2007
and threatened Plaintiff with disciplinary  action because her psychiatrist did not
describe what is hostile about Plaintiff's work  environment and the meaning of
"moderate to marked psycho-social stressors and harassment".

29.   Plaintiff's psychiatrist could not describe details of harassment or

hostility because  he  did not  witness the incidents and because the description of incidents falls  outside the scope of his medical examination and treatment.

30.   On March 1, 2007  Plaintiff requested FMLA. Defendants did not provided Plaintiff  with  proper FMLA documentation and did not respond to Plaintiff FMLA request.  On August 9, 2007, again Plaintiff requested FMLA and said request was again ignored.

31.  On March 7, 2007, Ms.  Clark  rejected Plaintiff's request to reconsider the denial of a reasonable accommodation.

32.  On March 9, 2007, Ms. Clark upheld Mr. Spanier's denial of sick leave to Plaintiff  because  the  medical  documentation  provided  no  assessment  or diagnosis independent of  Plaintiff's allegations. Ms. Clark warned Plaintiff that she is considering disciplinary action  because Plaintiff is absent without official leave.

33.   On March 10, 2007 Plaintiff's treating physician, Dr. Ellis, completed a detailed  questionnaire disclosing the nature, severity and duration of Plaintiff's impairments. Dr. Ellis  recommended a transfer to a neutral worksite to enable Plaintiff to concentrate on her tasks and  regain her prior efficiency.

34.   On March 26, 2007, Plaintiff renewed a request to be placed in a mutually survivable work environment. Plaintiff transmitted another request for

an accommodation on or  about April 5, 2007.

35. On April 4, 2007 Ms. Clark and Jackie Butler, Human Resource Specialist,  begin a draft proposal to  remove  the Plaintiff even though she had multiple request pending  with the Agency.

36.  On April 24, 2007, Ms. Clark denied Plaintiff's requests for sick leave for the period  from April 9 - May 15, 2007.

37.  On June 14, 2007, without prior announcement, representatives of Defendant appeared at Plaintiff's house to demand that Plaintiff surrender her identification badge and   parking decal. Plaintiff received an undated note informing her of Defendant's decision to  deactivate Plaintiff's identification badge and to restrict her access to the FAA Technical  Center.

38.  On or about June 21, 2007, Plaintiff received a notice of proposed removal.

39.  On September 7, 2007, Defendant retroactively granted Plaintiff the remainder of  her annual and sick leave, and 12 weeks of leave without pay under the Family and  Medical Leave Act, but notified Plaintiff of a decision to place Plaintiff on AWOL status as of June 20,  2007.

40.  On October 12, 2007, Defendant notified Plaintiff of the decision to

remove her  from the federal service, effective October 29, 2007.

## REHABILITATION ACT - REASONABLE ACCOMMODATION

41.  Plaintiff is a qualified person with a disability.

42.  Plaintiff was capable of performing the essential functions of her job as a computer  scientist with a reasonable accommodation during the time of the request.

43.  In violation of the Rehabilitation Act, Defendant did not take measures to end  harassment, to minimize distractions at Plaintiff's workplace, to provide a response to her request for assistance, and take other actions to  reasonably accommodate Plaintiff's disability.   Defendants' also refused to accommodate Plaintiff because they regarded her to be delusional.

44.   In violation of the Rehabilitation Act, Defendant ignored and denied Plaintiff's requests for an accommodation and instead removed Plaintiff from the federal  service.

WHEREFORE, Plaintiff prays this honorable court to: a)  Order Defendant to pay Plaintiff back pay and front pay, b) Award Plaintiff  compensatory damages, c) Award Plaintiff reasonable attorney's fees and costs, d) Order other appropriate relief to redress  violations of the Rehabilitation Act.

## REHABILITATION ACT

45.  Plaintiff incorporates the facts averred in paragraphs 1 - 44 herein by reference.

46.  The Rehabilitation Act, 29 U.S.C. §791(b) requires the Department of Transportation to have an affirmative action plan to provide adequate hiring, placement and  advancement opportunities for disabled individuals.

47.  Defendant failed to comply with obligations for affirmative action to provide for  adequate placement and advancement opportunities for the disabled, including Plaintiff.

WHEREFORE, Plaintiff prays this honorable court to: a)  Order Defendant to pay Plaintiff back pay and front pay, b) Award Plaintiff compensatory damages, c) Award Plaintiff reasonable attorney's fees and costs, d) Order other appropriate relief to redress  violations of Title VII of the Rehabilitation Act.

<u>RETALIATORY ACTS</u>

48.  Plaintiff incorporates the facts averred in paragraphs 1 - 47 herein by reference.

49.   After Plaintiff began informal counseling on September 25, 2006, the hostile work environment worsened, the Defendants denied her requests to be moved, and renegade on a prior agreement to allow her to participate in the Interchange Assignment Agreement Program, denied seat change, denied detail to EEOC.

50.  On January 4, 2007, Plaintiff filed a formal complaint of discrimination based on  race, gender, religion, perceived mental disability and reprisal to challenge the denial of a  promotion to the position of Team Leader, the absence

of an explanation for her non-selection,  the denial of training in modeling simulation, the denial of work assignments which would  enhance promotion opportunities, the spreading of false and salacious rumors about Plaintiff,  and hostile environment discrimination. Before filing the formal complaint of discrimination,  Plaintiff had contacted her EEO counselor to complain about the incidents.

51.   On January 8, 2007, Annie Clark asked Thomas Wood of the Human Resource  Management Division to investigate Plaintiff.

52.  On February 15, 2007, Ms.  Clark characterized one of Plaintiff's complaints as  borderline or actual insubordination.

53.  On February 16, 2007, Gerald Spanier informed Ms. Clark that advance sick leave depends upon a non-controversial request that does not infer work-connected causes.

54.   Defendant denied Plaintiff's requests for sick, annual, FMLA and advance leave.   Defendant ignored and denied her requests for assistance and for accommodations. Defendant also ignored her  requests for seat changes and to telecommute. Defendant denied her requests for details and to work in other Federal Agencies and or employers through the IPA program.  Defendant demanded  excessive doctors notes, and violated her HIPPA rights.  Defendant even intruded into Plaintiff privacy by going to her home with the pretext of getting her identification badge and parking decal.

Last but not least, these  retaliatory acts culminated in her removal.

WHEREFORE, Plaintiff prays this honorable court to: a) Order Defendant to pay Plaintiff back pay and front pay, b) Award Plaintiff  compensatory damages, c) Award Plaintiff reasonable attorney's fees and costs, d) Order other appropriate relief to redress  violations of Title VII of the Civil Rights Act and the Rehabilitation Act.

**DISCRIMINATION UNDER TITLE VII**
**NON SELECTION & HOSTILE WORK ENVIRONMENT**

55.  Plaintiff incorporates the facts set forth in paragraphs 1 - 54 herein by reference.

56.  Because of Plaintiff's race, religion, disability, and sex, Plaintiff was pervasively subjected to a  hostile work environment, denied appropriate training and assignments to enable her to  advance, denied the position of Team Leader, denied sick, annual, FMLA and advance leave,  denied requests for accommodations, requests for seat changes, had to provide excessive doctors notes,  was subject to HIPPA violations, subject to a heightened scrutiny, labeled as a problem employee, harassed for using her sick leave, and ultimately  was removed from the federal  service.

57.  Defendant failed to take reasonable measures to end the harassment of Plaintiff.

WHEREFORE, Plaintiff prays this honorable court to: a) Order Defendant

-13-

to pay Plaintiff back pay and front pay, b) Award Plaintiff compensatory damages, c) Award Plaintiff reasonable attorney's fees and costs, d) Order other appropriate relief to redress violations of Title VII of the Civil Rights Act and the Rehabilitation Act.

FMLA

58.   Plaintiff incorporates the facts set forth in paragraphs 1 - 57 herein by reference.

59. Defendant denied several requests from Plaintiff for FMLA leave.

60. Defendant violated the provisions of the Family Medical Leave Act when it denied Plaintiff FMLA leave, seat denial, and did not provide to Plaintiff the guidance documentation to enabled Plaintiff to obtain FMLA leave.

DAMAGES

61.   Plaintiff demands judgment against the Defendant and a judgment order requiring the Defendant to: provide retroactive back pay and seniority benefits starting from August 1, 2006; award compensatory damages for pain and suffering, emotional distress, humiliation, embarrassment, loss of self-esteem, including the loss of compensation, interest, benefits and pension; liquidated damages, award attorney's fees for the cost of representation throughout the pendency of this claim, including other costs and disbursements of this lawsuit and administrative proceeding; interest on damages, fees, and costs; negative tax consequence, and such other legal and equitable relief as this Court deems just

and proper under the circumstances.

JURY DEMAND

Plaintiff demands trial by jury.

Respectfully submitted,

**Jose Luis Ongay**
_____
José Luis Ongay, Esquire

521 S. Second Street
Philadelphia, PA 19147
(215) 928-0859

Date: January 14, 2010

-15-